Our next case for argument this morning is Michael Lairy v. United States. Julian. Good morning and may it please the court. The government forfeited the statute of limitations defense at issue here. The government could have reasonably known of the availability of that defense when Mr. Lairy raised his pro se ACA claim in 2021 because any and all ACA claims, regardless of their substance, were at least a year late under the deadline created by 2255 F1. And nothing in Mr. Lairy's pro se motion suggested that he was relying on or could rely on the uncommon scenarios in 2255 F2, F3, or F4 to render an ACA claim timely. That's the end. That's all the government had to know to raise the statute of limitations defense in 2021. That's reading an awful lot into a single line that says the drug priors may also be in question as more research may be needed. That's all he said. To be sure, Chief Judge Sykes, we don't dispute that the government needed and deserved a second chance to explain why that sentence is wrong. Of course the government could have had a second chance to say, listen, here are all the reasons why his drug priors do qualify. But the problem is, and this is the error in the case, the district court equated opening the door for that argument with opening the door for a statute of limitations defense that was readily available in 2021. And I think that's . . . If we were to hold that the government forfeited the limitations defense by failing to timely raise it, would a remand be necessary for the district court to determine whether exceptional circumstances favor forgiving the forfeiture? In our view, no, Your Honor. I do recognize that is one option for the court. But in our view, the answer is no, because the government and I, I believe we agree that a district court cannot forgive a forfeiture if it's prejudicial. And in the district court . . . How are you prejudiced here? I'm sorry, finish answering Judge Roedner's question and then tag that on at the end, please. Thank you, Your Honor. So I think the government and I agree that any forfeiture that resulted in prejudice cannot be forgiven under this court's precedent. To answer Judge St. Eve's question, two responses. One, I think the government has waived any argument about prejudice because they didn't dispute it in the district court. And two, we were prejudiced in two distinct ways. One is Burgeon v. Gosch. Yes, we got an opportunity to respond. I admit that. But Gosch said that is not enough because you have to take the practical considerations into effect. That's exactly what Gosch did. I got a brand new affirmative defense raised in March of 2023, and then I had to communicate with the client about years of litigation, whether this was what he had for equitable tolling. And when I spoke to him, he lost all his paperwork because the BOP had moved him multiple times. And that's very important for diligence and extraordinary circumstances. But for this particular, for the ACCA argument, you haven't identified or could you identify what particular paperwork he claims he lost that would have been needed? But that's because the government didn't dispute prejudice, Your Honor. I'm not going to battle the government on an issue it doesn't dispute when my client is serving a legal time. But if we're looking at prejudice and whether or not you were prejudiced, you were responding to the question and relying on Gosch and noting that his papers were lost. But what in those papers would have mattered for this particular argument? I think they would have mattered for reasonable diligence and the equitable tolling. He was repeatedly requesting. That's a separate question than for waiving of the statute of limitations in the first instance. I don't think so, Your Honor. Respectfully, I disagree because if he can show equitable tolling, then he can get past the statute of limitations. But it's a separate inquiry though, isn't it? There's a question of did he forfeit the statute of limitations? And even if he did, were you prejudiced by it? And then there's the separate equitable tolling. So if you weren't prejudiced by any forfeiture, it can be forgiven. But then you still have the equitable tolling argument as a separate argument. I'll take Your Honor's view of it, but I'll say something in response. One, the government has not asked this court to forgive the forfeiture. So that's waived. And the government did not ask the district court or the district court did not rule that it would forgive the forfeiture. And to me, that's important because Judge Young could have easily said, listen, there was some back and forth here. I think the government was timely. But even if it wasn't, I would forgive it. And Judge Young didn't do that because we have an innocent man here. We have someone who is serving illegal time when the district court lacked statutory authority to impose this sentence. And I would love to answer Judge Roedner's question again, to go back and argue the interest of justice here in front of Judge Young and explain why he should not forgive the forfeiture if this court rules that it was untimely. And what would you say? Let me, yeah. All right. I'm sorry. What would you say? Well, the standard first would be prejudice. And we would have to have that battle over again. And I would point out all the documents that Ms. Szilard would presumably have to get an affidavit and explain what he lost and tell Judge Young that, look, we can't really do the equitable tolling analysis now because the government waited so long to raise the defense. And I think that's going to be a strong point, in my view, on a remand. And then second, even if I wasn't prejudiced or Ms. Szilard wasn't prejudiced, it doesn't mean you get forgiven. You have to battle out the interest of justice. And I would show Judge Young that the government had an adequate opportunity, that Ms. Szilard is innocent. I don't want to overstate that, but it's hard to understate that he is serving illegal time right now. He's not innocent. He committed the gun offense. He's innocent of the ACA, Your Honor. And the conditions for the ACA enhancement are not present. But he's guilty of the crime and was duly convicted of it. It's the length of his sentence that's at issue here. That's not a guilt or innocence question. It's a sentence enhancement question. No, Your Honor. Go ahead. Go ahead. No, Your Honor. That gets into the miscarriage of justice issue that we talked about in the briefs. Post Erlanger, it's clear that the ACA is an aggravated crime because everything in the ACA is essentially 922G plus 9224E. And in Erlanger, the Supreme Court said that these are all elements. They all have to be submitted. And a clear and easy application of a lane, which is the Supreme Court case, says when you have the core crime and a fact triggering the mandatory minimum, that's a new offense. That's an aggravated crime. So I don't think we can really say this is not guilt or innocence. It's guilt or innocence of the ACA. It's not guilt or innocence of 922G. The court in Erlanger went out of its way to limit the holding in that case by saying it decided nothing more than that the occasions inquiry must be presented about the predicates needs to be presented to a jury or admitted by the defendant under the Fifth and Sixth Amendments, didn't decide anything else, was very careful not to decide anything else, and did not recharacterize the ACCA as a substantive crime as opposed to the prevailing understanding of the ACCA as a penalty enhancement statute. I agree that the court in Erlanger did not do so, but it had no reason to do so, and it certainly didn't hold otherwise. And as I put in my brief, the court said, quote, in Erlanger, this case is as nearly on all fours with the Prendi and a lane as any we might imagine. And I also want to point out something else here, and I didn't put it in my brief, but it's important to realize that this was so clear that the Department of Justice conceded in every circuit in the United States and in the Supreme Court that the result the Supreme Court reached in Erlanger was, quote, unavoidable. That's the solicitor general's We don't have an occasions issue here, so the merits question in Erlanger is not really relevant. I think we do, Your Honor, because the occasions inquiry said he has to have either three prior drug offenses or three prior violent felonies that happened on occasions different from one another. He doesn't. There's no way the government on any retrial, if this case started from scratch, the government is prohibited. And it's not something like legal innocence where we win because of a suppression motion, right, because the government can't get evidence in. This is a claim in which the government cannot, under any circumstances, prove that he is guilty of the ACCA. But the actual innocence cases all involve factual innocence. I didn't commit this crime. Where the ACCA, as Chief Judge Sykes was pointing out, is not a separate crime. The argument is that it's a misclassification of a drug offense, which is really a legal issue and not a factual innocence. So the circuits have split on that issue, Your Honor, and I don't think the court should have to weigh this out because I think this case should be resolved on forfeiture. But if the court does get there, it is true that the Fourth, the Fifth, and I believe the Eleventh Circuits have said what you have said. But the Eighth Circuit in Lofton v. United States said otherwise, and so did the Ninth Circuit in a case called Allen v. Eves, which is not cited in my brief, but I'm happy to attach it in a 28-J letter. So it's not clear that what Your Honor is saying is correct. I think it's up to dispute. Would we have to overrule multiple of our cases that have talked about this not being a separate element? Well, I think intervening Supreme Court authority says what the court needs to say, and that is the founding actor is full of elements and they all have to be submitted to a jury, and they have to be decided beyond a reasonable doubt. That smells like a crime. It sounds like a crime. It's how we define a crime. So I don't see how that conclusion could be different if a jury has to decide it. So we sort of talked about the miscarriage of justice issue and the forfeiture issue. I'll briefly discuss tolling. I do think Mr. Larry did not get his day in court to show why he could satisfy the standard of tolling, and I think that was a clear legal error by the district court. It didn't address the hearing. It didn't say the word hearing. It didn't say 2255B. Why were Mr. Larry's statements specific enough to get a hearing? And I agree. The court did not address this. It addressed tolling, but it didn't address the hearing question. But in order to get a hearing, you have to put forth some level of specificity. Yes, Your Honor. And he explained that he had been on lockdowns routinely, that his attorney would not hand over the case file, even though he and his mother were trying for years to get this attorney to do something. And he also explained that he couldn't visit the law library. I mean, the district court noted there were gaps in his timing. Yes, but if you look at his, I think it's SA 54. I'm sorry if that's the wrong site. He does say that he has been in lockdown even years after 2020. And at civil docket 10 at one, when he's asking for an extension, he explains, Your Honor, I need more time to file this motion because I'm still on lockdown. And I've been on lockdown since February of 2020. What about the fact that he was able to file his rehab 2255 petition in June of 2020? How should that impact the equitable tolling analysis? I don't think it should, Your Honor, because that was just a new Supreme Court case. He needed his file to look at prejudice for ineffective assistance and to see what his counsel had said. A pro se litigant shouldn't have to come to a court and shout ineffective assistance before he can even read the record. So I see that I'm in my rebuttal time. I would like to reserve the rest if the court permits. That's fine. Mr. Wright. May it please the court. Brian writes for the United States. Nobody disputes that Mr. I know how terrible this is, but I am going to start you right off, Mr. Wright. Totally fine, Judge Roebner. Thank you. Because, you know, the court below excuses the government's failure to raise the statute of limitations defense because the petitioner did not adequately develop that claim. And for me, that might be convincing. If the government simply did not recognize that the issue had been raised at all because it was so perfunctory. But the government clearly recognized that an ACCA challenge was presented and the government raised a number of defenses to it, including that it was waived in the case. Why couldn't the limitations defense be raised as well? And I'm trying to understand how the court could conclude that the government's failure to raise the limitations defense was neither a waiver nor even a forfeiture. And so you've got to help there. So, Your Honor, I think there is a practical and a legal answer to that. The legal is really what's most important. And then after that, I hope to place the judge's decision in context of everything. So practically speaking, we understand Your Honor's point. Mr. Larry did say the word ACCA. And our goal in post-conviction motions is always to immediately raise every defense possible. That's our goal. If nothing else, to avoid arguments like this. But that ideal litigation practice is not the requirement. So switching to the legal, I think you take the rule and this court's precedent. So Rule 15 says amendments should be freely given. This court's precedents have said that failure to raise a defense in the first instance isn't necessarily untimely like burden, especially in cases where the defendant or the other side may equally be to blame, which is what the court said in Bourgeois. And in this instance, I think what the court did was take Mr. Larry's statement as a plea for help, a plea for counsel. And I think it's really important to place the judge's decision in that context. So the judge under Day v. McDonough could have raised the statute of limitations sua sponte on day one. Instead, it took a more prisoner-friendly approach, appointed counsel for Mr. Larry for the second time, allowed Mr. Larry to develop the substantive issue of ACCA, and then allowed Mr. Larry two times to respond to the government statute of limitations defense. So I think the worst you can say about the judge is that he showed leeway or leniency to both litigants in his court. And it's hard for me to see how that is an abuse of discretion, which requires an implausible choice. And it can't be that the only plausible choice was to let one side go forward and brief an issue that he did not really raise while him and the other side. Mr. Wright, look, having recognized that an ACCA claim was raised, okay, doesn't, for instance, Ariella Castillo tell us that the government was required to present the statute of limitations defense in its answer or the defense is forfeited? Am I wrong about that? If that's what Ariella Castillo says, it is wrong because of Dave versus McDonough. Dave versus McDonough allows the district court to raise it any time. That said, Ariella Castillo is much different because the government didn't raise the statute of limitations until appeal. Now, certainly, again, it would have been best practice for us to raise that defense in the initial response. We take the court's criticism on that. I think that's fair. But that does not necessarily mean it's forfeiture under Burton and Bourgeois. And even if it is forfeiture, as Judge St. Eve talked about, the district court can forgive that forfeiture if there's no prejudice. And even to this point, Mr. Larrys cannot identify any prejudice as to forfeiture of timeliness because he was able to defend against it in two separate motions. Do you think the district court addressed the prejudice question here? No, I think the district court decided it on that the government wasn't untimely. Of course, there was some rather broad general language. I wasn't sure if you were interpreting that as addressing prejudice. That was going to be my second point. I think squarely put, the district court really decided it on the government not being untimely. This court, of course, can affirm on any ground. And I think the district court's reasoning goes just as well to prejudice as it goes to the first point. The district court said that by saying the government was not untimely, the reasons given were that it or the government couldn't understand exactly what Mr. Larry was saying. That goes right to prejudice, too. I thought that the district court held that the government's failure to defend the limitations defense was not a waiver because it was not intentional, but also held that it was not even forfeiture. And we are talking about a pro se here. Yes, and that's why the district court did what I would think the court would most want to do in a situation like this, and that's appoint Mr. Larry counsel. I think this case would be completely different, at least at the equity level, if the district court forgave the government for not raising the timeliness to begin with and didn't appoint counsel for Mr. Larry. Now, stepping back from that, not on the equities, under this court's precedence, the district court could have simply said Mr. Larry's argument was waived as perfunctory because it really was no argument at all. It was a question and dismissed it on that ground. I think the court would have been within its discretion to do that. I don't think the court usually encourages that practice, but it could have. You know, the government here, you know, you can see that the underlying claim is meritorious and that it has resulted in a lengthy sentence ungrounded in the law. So, I mean, do you think the equities should not favor forgiving the forfeiture? I don't think so, because I think the equities, you have to balance the congressional statute of limitations. As I was going to start, nobody here disputes that Mr. Larry's motion was untimely. So, the question is whether he should be provided an escape hatch around that congressionally mandated statute of limitations. Congress has drawn the line in these situations as finality, in favor of finality, and I think we should definitely take what the Supreme Court recently said in Jones v. Hendricks as favoring finality in these situations, too. Of course, it's not the exact same, but this has been the classic battle in collateral review cases, balancing error correction and finality. Congress in this situation favors finality. The last word on that battle in the Supreme Court favors finality. What about the equitable tolling argument? The district court did not address a hearing at all, and Mr. Larry had put forth allegations about being in lockdown, about continuing to be in lockdown once COVID started. We all know how hard it was for inmates during COVID. Why didn't he raise enough to be entitled to a hearing on equitable tolling? Because none of his factors, even if taken as true, warranted the extraordinary remedy of equitable tolling. So, I think they were all immaterial. If we just look at them. What about the no file? He couldn't get his file. I think that, well, the district court, so I guess I would start with, I think that is somewhat of a difficult claim, just like the law library, because Mr. Larry's rehire claim was fully fleshed out. It was very good. It had case law, multiple pages. So, the argument that he didn't have the resources necessary, I don't think holds much water. Is that something, though, that we can determine on this record, or is that something that should go back for the district court to balance that and determine under 2255B if a hearing is warranted? The district court already balanced that by saying even accepting Mr. Larry's arguments, he can't prove equitable tolling, and hearings aren't necessary in those situations. So, I think the time period is really important here. Mr. Larry's deadline to file was July of 2019. His letters show periodic lockdowns from mid-September until April or maybe after April. There's multiple months in there where he was, nothing in the record supports that he was in lockdown. Even so, he did not file or even mention ACCA until early 2021. That's 33 months after the fact. He can't show diligence, and the lockdowns aren't, he does not have any evidence showing that the entire time period, and even during, even with the lockdowns, he was able to draft a really strong, at least for a pro se litigant, re-hiathe claim. It's not like it was bare bones. Of course, his first re-hiathe motion was, but the second one was not, and there's no reason he couldn't have done that for ACCA too. And even with the ACCA, he clearly was aware of what predicates he pointed out, the drug priors. He was wrong about the escape, but the case file really isn't necessary for that. I know, ideally speaking, sure, but pro se litigants file these motions all the time without really anything. They filed off memory. A Ruth claim based on isomers of cocaine is not exactly intuitive. No, it's of course not. I think, but going back, that's why the district court appointed counsel for Mr. Larry, because it was a difficult issue to raise. But I agree, it is a difficult claim, but difficulty doesn't mean diligent or extraordinary circumstances. I don't know, I'm unaware of any precedent showing that a difficult claim is an extraordinary circumstance that's sort of inherent with collateral review in general, I would think. If the court has no further questions on equitable tolling, I do want to address the... Oh, no, go ahead. I do want to address the actual innocence exception in the few minutes I have left. That's what I wanted to do, so I will ask you a question if you don't mind. Of course. Do you want to start with the question? Yeah, yeah, thank you. Because you stated that under Lund, or Lund, that Larry can't pursue a claim of actual innocence because a petitioner's actual innocence claim, a claim for relief on the merits, cannot be the same. But we emphasized in Lund that the petitioner had not brought a such as ineffective assistance of counsel. And here, Larry pursued that constitutional challenge. So why would Lund preclude his claim for actual innocence? So on that point, we don't read Lund to necessarily say an underlying ineffective assistance is always separate. So we think that Mr. Larry's argument here reads that at too high a level of generality. Here, he's claiming that he's actually innocent based on drug isomers, and his underlying constitutional claim is that his attorney was ineffective for not raising a drug isomers claim. We think those are effectively the same question. That said, we would encourage the court to avoid the more difficult questions with the actual innocence and just start at the top. So Mr. Larry's actual innocence argument would greatly expand that doctrine. Under McQuiggan, there's no question a prisoner with new evidence can pass through the gateway. Mr. Larry has no new evidence. In some circuits, albeit not this circuit, intervening changes in the law are a means to pass through the gateway. Mr. Larry, in his reply brief, disavows reliance on new law. So he is left with cases and arguments that were in existence and apparent at the time of conviction, sentencing, and his first 2255. No court has accepted access to the gateway in those circumstances. The one, I suppose, intervening change in the law he does try to rely on is Erlinger, but Erlinger, as the court pointed out, does not render him innocent of ACCA. His problem with ACCA is not an Erlinger problem. It is a drug isomer problem. So the court should not open the gateway based on cases that Mr. Larry could have raised at the time of sentencing. So we would encourage the court to decide on background. When you say doesn't render him innocent of ACCA, are you saying that it just means he doesn't qualify for the enhancement and it's not a separate offense? I don't think you're disputing that if he were sentenced today, he would not get an ACCA enhancement. Correct. I want to be clear again. I'm not fighting that. If anything I said could be missed, I don't. If Mr. Larry was sentenced today, he would not be ACCA because of Ruth Delatory, because of the drug isomer cases. Erlinger would not do his ACCA status. So Erlinger itself does not render him actually innocent of ACCA. It's the drug isomer cases, which are not retroactive and were in existence. That argument wasn't in existence at the time of his conviction and sentencing. There are no further questions. We'd ask the court to affirm. Thank you. Mr. Leanne. Thank you, Your Honor. A few points in response. First, notice the government has no answer to Judge Rosener's question about how it could raise every affirmative defense possible, except the statute of limitations in October 2021. There is no answer because any and all ACCA claims, regardless of substance, were at least a year late in 2021. That was noticed. Second, the government says there's no abuse of discretion here. But the underlying question of whether the government was timely, that's de novo. And I would point the court to Burton v. Ghosh for that case. Discretion only comes into play once the district court decides to forgive it. It comes into play on the prejudice. Exactly. Exactly. And we would ask the court, if it does rule that the government is untimely, to please give Mr. Larry a chance to go back in front of Judge Young and explain why he should not forgive this defense to keep an innocent man in prison. On equitable tolling, I think my friend on the other side may have misstated something regarding the Raheith claim. When Mr. Larry fleshed out the Raheith claim, that was when he raised the ACCA claim. He only said anything about Raheith before then in a check the box form. That was not fleshed out. He didn't need his case file to say so. All he needed was a Supreme Court case that someone in prison told him about. Going to the actual innocence claim, I do think that's a hard issue. And I Supreme Court explicitly reserved this type of case, this type of issue in a 2004 case named Drecke. And it told circuit courts, even a reverse and remanded on this ground, that when you have this type of claim, do everything you can to decide it on other issues. And here we have a really good forfeiture issue, in my view, to at least give Mr. Larry a chance to plead his case in front of Judge Young. And last but not least, there's probably one elephant in the room. Chief Judge Sykes pointed out that maybe isomers and that type of analysis is not clear. But Ruth and Della Torre are the most well-known opinions for criminal practitioners in this case. And the government's 2255 counsel had worked with us in cases before and conceded this exact issue. She knew what she was doing, and she tried to beat him with procedure. Fair enough. But when you don't proceed yourself, there are consequences. Thank you, Your Honors. Thank you. Our thanks to both counsel. The case is taken under advisement.